| | |
|---|---|
| 1 | |
| 2 | |
| ... | |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| JANET SIHLER, Individually and On Behalf of All Others Similarly Situated; CHARLENE BAVENCOFF, Individually and On Behalf of All Others Similarly Situated,<br><br>　　Petitioners,<br><br>v.<br><br>MICROSOFT CORPORATION,<br><br>　　Respondent. | Case No.:<br><br>**MOTION TO COMPEL COMPLIANCE WITH SUBPOENA FOR PRODUCTION OF DOCUMENTS BY NON-PARTY MICROSOFT CORPORATION**<br><br>**Note on Motion Calendar:** October 23, 2024<br><br>*Underlying action*: *Sihler et. al. v Global E-Trading LLC, et al.* (Middle District of Florida, Case No. 8:23-CV-1450-VMC-UAM) |

The underlying action in which this subpoena duces tecum was issued is captioned *Sihler et al. v. Global e-Trading, LLC et al.*, Case no. 8:23-CV-1450-VMC-UAM. The underlying action is pending in the Middle District of Florida. Non-movant Microsoft Corporation is not a party to the underlying action.

On June 21, 2024, Plaintiffs in the underlying action ("Petitioners") issued a subpoena to Microsoft (the "Subpoena"). The Subpoena requested Skype chats between a person named David Flynn and several other specifically identified accounts and individuals. Along with the Subpoena, Petitioners served a signed declaration from Mr. Flynn consenting to the disclosure of his content data with specific accounts and individuals. On July 12, 2024, Microsoft served Petitioners' counsel with responses and objections. Petitioners conferred with Microsoft by telephone or videoconference on August 20, 2024 and August 27, 2024, and by email on August 29, 2024. On September 4, 2024, Microsoft represented that it would not produce documents in response to the Subpoena.

The Subpoena is tailored and is not unduly burdensome; it seeks documents that are relevant to the underlying action and that Petitioners cannot obtain through other methods. Accordingly, Microsoft should be compelled to produce the requested documents.

## I.     THE UNDERLYING ACTION

The underlying action arises out of a scheme to defraud consumers in connection with the sale of sham weight-loss pills branded "Ultra-Fast Keto Boost" or "Instant Keto Boost" (the "Keto Products"). The merchants who peddled the worthless Keto Products (the "Keto Associates") advertised that celebrities had endorsed the Keto Products and claimed to offer promotions and discounts. As the victims of the scheme discovered, the gleaming celebrity endorsements were fabricated, and they were charged far more for the Keto Products than the

MOTION TO COMPEL
COMPLIANCE WITH SUBPOENA
CASE NO.:

KNEUPPER & COVEY PC
600 1ST AVE., SUITE 102, PMB 2072
SEATTLE, WA 98104
(206) 759-7520

promotional price that they were promised.[1] After the Plaintiffs entered their payment information in reliance on the imaginary celebrity endorsements and promises of "free" products, the sellers of the Keto Products, without authorization, charged them for the full price of the products that they purchased. Neither Plaintiff was able to obtain a refund. Mr. Flynn was one of the Keto Associates at the center of the Keto Product fraud, creating the false and misleading websites through which unwitting victims purchased the Keto Products and otherwise driving the direction of the scheme.

Defendants in the underlying action played an essential role in concealing the Keto Products scam (the "Keto Racket"). One hurdle to perpetrating a fraud that involves overcharging consumers *en masse* is that consumers who are overcharged or dissatisfied may seek a charge back from their bank or credit card company. Once a merchant's charge back rate exceeds a certain percentage of its total transactions, the merchant may be subject to fees and eventually could be cut off from the payment processing services and financial services at major banks and credit cards. Plaintiffs allege Defendant Chargebacks911 in the underlying action worked to help the sellers of the Keto Products to keep their chargeback rate low artificially and thus to allow the Keto Racket to continue undetected. Plaintiffs allege that Defendants were part of an illegal enterprise under the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-68. The underlying action names as defendants Global E-Trading LLC d/b/a Chargebacks911, its co-founder and former CEO, Gary Cardone, and its co-founder and current CEO, Monica Eaton.

---

[1] Petitioners also have brought claims on behalf of themselves and similarly situated class members against the Keto Associates. *See* Second Amended Class Action Complaint, *Sihler et al. v. The Fulfillment Lab, Inc., et al.*, 3:20-cv-01528-LL-MSB (S.D. Cal. March 7, 2022), ECF No. 120.

- 2 -

MOTION TO COMPEL
COMPLIANCE WITH SUBPOENA
CASE NO:

KNEUPPER & COVEY PC
600 1ST AVE., SUITE 102, PMB 2072
SEATTLE, WA 98104
(206) 759-7520

On August 13, 2024, the court in the underlying action certified a nationwide class of consumers. *See* Order Granting Plaintiff's Sealed Motion for Class Certification, *Sihler et al. v. Global e-Trading, LLC et al.*, ECF 156.

## II. MICROSOFT'S CONNECTION TO THE UNDERLYING ACTION

The Subpoena seeks documents that would allow Petitioners to see complete communications between the Keto Associates and the Defendants in the underlying action. *See* Sampson Decl., Ex. A. In the underlying action, Plaintiffs allege that Chargebacks911 provided consulting and implementation to the Keto Associates related to their payment processing systems to mask their true chargeback rate using fake transactions and other illegal methods.

Petitioners know that Skype was a crucial channel of communication between the Keto Associates and the Defendants in the underlying action. Mr. Flynn produced some Skype chats in the underlying action, although, as explained below, those chats are incomplete on their face. Several Skype chats were quoted in Plaintiffs' original complaint in the underlying action. *See, e.g.*, *Sihler et al. v. Global e-Trading, LLC et al.*, ECF 1 at ¶¶ 59, 67, 71.

The Skype chats between Mr. Flynn and the individuals and accounts identified in the Subpoena relate directly to the perpetration and concealment of the Keto Racket and the involvement of the Defendants. Plaintiffs allege that the Defendants and the Keto Associates orchestrated the Keto Product scam, in part, through Skype conversations. Specifically, that the Defendants advised the Keto Associates over Skype on how to structure the financial backend of the Keto Racket.

The documents sought from Microsoft are essential to Petitioners' ability to show that the Keto Associates—with Defendants' assistance—spread their sales among various merchant accounts to minimize the potential negative effects of detection by payment processors of the Keto Product fraud's scam. Those Skype

- 3 -

MOTION TO COMPEL
COMPLIANCE WITH SUBPOENA
CASE NO:

KNEUPPER & COVEY PC
600 1ST AVE., SUITE 102, PMB 2072
SEATTLE, WA 98104
(206) 759-7520

chats would demonstrate the existence, mechanics, and longevity of the Keto Product fraud and the Defendants involvement therein.

### III. The Subpoena.

On June 21, 2024, Petitioners issued the Subpoena to Microsoft. Broadly, the Subpoena requested that Microsoft produce Skype chats between Mr. Flynn's Skype account, "xcellent.choice" and a list of other Skype users or accounts from January 2019 through December 31, 2023. *See* Sampson Decl., Ex. A. The other accounts were identified by the user's name and/or their Skype account handle. *Id.* The Subpoena provided that Microsoft should produce those documents by July 25, 2024 at a location fewer than 100 miles from its corporate headquarters. Enclosed with the Subpoena was a declaration executed by Mr. Flynn that Petitioners obtained in the related action pending in federal court in California. Sampson Decl., Ex. B at 10-11 (Declaration of David Flynn dated April 30, 2024). The Subpoena was delivered personally to Microsoft on June 24, 2024. *See* Sampson Decl., Ex. C (Proof of Service dated June 26, 2024).

### IV. Petitioners' Need for the Documents Requested in the Subpoena.

Petitioners have a distinct need for Microsoft's documents. Petitioners require Microsoft's records to ensure a complete record of the documents and communications through which the Keto Associates and the Defendants perpetrated their crimes. Although Petitioners have obtained some Skype data from Mr. Flynn himself, those communications only underscore the reasons why Petitioners need the data in Microsoft's possession. First, Petitioners need to ensure the completeness of the conversations as produced by Mr. Flynn. Mr. Flynn produced Skypes in two ways. For part of the production, Mr. Flynn took screenshots of his Skype account. *See* Sampson Decl., Exs. D, E (Screenshots of Skype Conversations). Petitioners can see the scroll bar in the screenshots and in at least two sets of chats the scroll bar

- 4 -

MOTION TO COMPEL
COMPLIANCE WITH SUBPOENA
CASE NO:

KNEUPPER & COVEY PC
600 1ST AVE., SUITE 102, PMB 2072
SEATTLE, WA 98104
(206) 759-7520

does not go all the way to the bottom in the series of photos, raising the possibility that there are additional Skype chats. For the remainder of the production Mr. Flynn used the Skype Export tool. This process involved Mr. Flynn downloading all Skype messages in his account. Mr. Flynn was not required, however, to produce all of his Skype messages, so he did not produce the Skype export to Petitioners in native form. Instead, he viewed his messages privately and then he copied and pasted messages into a Microsoft Word document. *See* Sampson Decl., Ex. F. Put simply, these communications may not tell the entire story. Plaintiffs need the records stored on Microsoft's servers to verify the completeness of Mr. Flynn's production. For the same reason, further efforts to obtain more Skype data from Mr. Flynn would not be sufficient to confirm the Skype data. Put simply, Microsoft is the natural source of a complete record of the conversations that Mr. Flynn has allowed Plaintiffs to access.

Second, Petitioners understand that Mr. Flynn may have participated in group chats with individuals or accounts included in the Subpoena. Even if Mr. Flynn no longer is part of those conversations and cannot see them, they nonetheless continue to exist. Insofar as Mr. Flynn had group conversations involving persons who are included in the declaration enclosed with the Subpoena, those conversations would be within the bounds of the consent that Mr. Flynn has provided. To the extent these group conversations involve parties to the current litigation, Plaintiffs have requested those communications but have not been able to obtain a full and complete set of those discussions, either. Here again, Petitioners' need for Microsoft's data arises out of Petitioners' right to ensure that the Skype conversations that are produced are complete. Petitioners need data from a disinterested third-party to verify the completeness of the productions from Mr. Flynn and the Defendants. Mr. Flynn has given his permission for Petitioners to access his content data from Skype, and the most efficient means of doing so is to obtain it directly from Microsoft.

- 5 -

MOTION TO COMPEL  
COMPLIANCE WITH SUBPOENA  
CASE NO:

KNEUPPER & COVEY PC  
600 1ST AVE., SUITE 102, PMB 2072  
SEATTLE, WA 98104  
(206) 759-7520

The Subpoena also is narrowly tailored and not unduly burdensome. It seeks only those communications between Mr. Flynn—one of the principal Keto Associates—and other Keto Associates or persons affiliated with the Defendants to the underlying action. The Subpoena identifies those individuals by name, and often, by the specific account handle that they used on Skype.

Microsoft transmitted objections to the Subpoena on July 12, 2024. *See* Sampson Decl., Ex. G. Microsoft raised several general objections and specific objections to each request. As to each specific request, Microsoft made substantively identical objections that the requests were "not relevant, necessary, and proportional to the needs of the case and places a disproportionate and undue burden on a third party" because they failed to define certain terms. *See, e.g.*, Sampson Decl., Ex. G at 8-9. Microsoft also lodged an objection with respect to each request that would not produce responsive documents absent "verified account holder consent" under the Electronic Communications Privacy Act ("ECPA"). *Id.* Microsoft did not agree to produce any documents in response to the Subpoena.

Petitioners conducted a meet and confer with counsel for Microsoft on August 20, 2024. Sampson Decl. ¶ 13. During the meet and confer, counsel for Microsoft emphasized that its principal objection to the Subpoena is that it did not reduce the burden on Microsoft and also noted that disclosure of subscriber content data required Mr. Flynn's consent.[2] Counsel for Microsoft requested further clarification about why the data could not be obtained from Mr. Flynn. On August 27, 2024, counsel for Plaintiffs and counsel for Microsoft held a further meet and confer.

---

[2] Microsoft also noted that the Subpoena did not identify the issuing court. Counsel for the Plaintiffs identified themselves as the issuing party in correspondence transmitted with the Subpoena and the court for the underlying action in the consent transmitted with the Subpoena, Sampson Decl., Ex. B at 6, and during the meet and confer process.

- 6 -

MOTION TO COMPEL
COMPLIANCE WITH SUBPOENA
CASE NO:

KNEUPPER & COVEY PC
600 1ST AVE., SUITE 102, PMB 2072
SEATTLE, WA 98104
(206) 759-7520

Counsel for Plaintiffs explained why Petitioners needed the data directly from Microsoft—namely, for the reasons identified above. Sampson Decl. ¶ 14. Counsel for Microsoft requested that counsel for Plaintiffs provide such explanation in writing, which counsel for the Plaintiffs did on August 29, 2024. Sampson Decl. ¶ 15. On September 4, 2024, Counsel for Microsoft represented that Microsoft stood on its objections. As of the date of this Motion, Microsoft has not produced documents responsive to the Subpoena. Sampson Decl. ¶ 16.

## V.  LEGAL ARGUMENT

### A. This Court Has Jurisdiction to Enforce the Subpoena.

"Pursuant to Rule 45, disputes involving subpoenas are generally resolved in the district where compliance is sought." *In re Subpoena to Amazon.com, Inc.*, No. C19-1744RSL, 2019 U.S. Dist. LEXIS 200628, at *1 (W.D. Wash. 2019). Microsoft can be found at its principal place of business: One Microsoft Way, Redmond, WA 98052-6399. Petitioners sought the production of documents at Addison Legal Services, LLC, 2405 Evergreen Park Drive SW, Suite B-2, Olympia, WA, 98502, a location that is fewer than 100 miles away from Microsoft's principal place of business and that is within this federal judicial district. Microsoft's principal place of business and the location for subpoena compliance are within this judicial district. Accordingly, this court is the court where compliance is required for purposes of enforcing the Subpoena. *See US Plywood Integrity Coal. v. PFS Corp.*, No. 20-5042 BHS, 2021 U.S. Dist. LEXIS 22466, at *8 (W.D. Wash. 2021).

- 7 -

MOTION TO COMPEL
COMPLIANCE WITH SUBPOENA
CASE NO:

KNEUPPER & COVEY PC
600 1ST AVE., SUITE 102, PMB 2072
SEATTLE, WA 98104
(206) 759-7520

## B. Petitioners' Are Entitled to the Requested Documents Under F.R.C.P. 45

The Subpoena—focused and specific—calls for the production of documents that are relevant to Petitioners' claims in the underlying action, easily identifiable, and tailored to the specific needs of the Petitioners' case. "The scope of discovery under Rule 45 is the same as under Rule 26(b)." *Grund & Mobil Verwaltungs AG v. Amazon.com, Inc.*, No. MC23-56RSL, 2023 U.S. Dist. LEXIS 151497, at *11 (W.D. Wash. 2023).

> Rule 26(b)(1), in turn, provides:
> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

"On a motion to compel discovery, the moving party carries the initial burden of demonstrating relevance." *Grund & Mobil Verwaltungs AG*, 2023 U.S. Dist. LEXIS 151497, at *12 (citation omitted). "The test for 'relevance,' in the context of a Rule 45 subpoena to a non-party, is no different from the test under Rules 26 and 34." *Anstead v. Va. Mason Med. Ctr.*, No. 2:21-cv-00447-JCC-JRC, 2023 U.S. Dist. LEXIS 44770, at *6 (W.D. Wash. 2023) (citation omitted). "Under Rule 26, the concept of relevance has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Docklight Brands Inc. v. Tilray Inc.*, No. 2:21-cv-01692-TL, 2023 U.S. Dist. LEXIS 141734, at *4-5 (W.D. Wash. 2023) (citation omitted). "[W]here relevance is in doubt, the Court should be permissive in allowing

- 8 -

MOTION TO COMPEL
COMPLIANCE WITH SUBPOENA
CASE NO:

KNEUPPER & COVEY PC
600 1ST AVE., SUITE 102, PMB 2072
SEATTLE, WA 98104
(206) 759-7520

discovery." *Erickson v. Microaire Surgical Instruments Ltd. Liab. Co.*, No. C08-5745BHS, 2010 U.S. Dist. LEXIS 55838, at *6 (W.D. Wash. 2010). "Once relevance has been established, the burden then shifts to the non-moving party to show that discovery should be disallowed and to support its objections with evidence." *Grund & Mobil Verwaltungs AG*, 2023 U.S. Dist. LEXIS 151497, at *12 (citation omitted). "Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all." *Amazing Ins., Inc. v. Dimanno*, No. 2:19-cv-01349-TLN-CKD, 2020 U.S. Dist. LEXIS 165946, at *13 (E.D. Cal. 2020).

"The burden of showing that a subpoena is unreasonable and oppressive is upon the party to whom it is directed." *Goodman v. United States*, 369 F.2d 166, 169 (9th Cir. 1966). What constitutes an undue burden when a nonparty is subpoenaed under Rule 45 is coextensive with the concept of burden for a party. *Mount Hope Church v. Bash Back!*, 705 F.3d 418, 429 (9th Cir. 2012). "[C]ourts consider the need of the requesting party, the breadth of the request, the time period covered by it, the particularity with which the discovery is described, and the burden imposed." *Lozano v. Doe*, No. C22-1477JLR, 2022 U.S. Dist. LEXIS 202840, at *8 (W.D. Wash. 2022)

Petitioners' requests to Microsoft are relevant to Petitioners' claims in the underlying litigation. Specifically, Microsoft's records are relevant to showing how the Keto Associates worked with Defendants and concealed their fraud with the assistance of the Defendants in the underlying action. The Defendants in the underlying action were allegedly involved in the back-end concealment of the fraud from payment processors. Petitioners know that the Keto Associates and the Defendants used Skype to coordinate their activities and to discuss the ways in which they would carry out the fraud. Courts have deemed relevant communications that could show (i) the purpose and existence of an illegal enterprise under RICO, (ii)

- 9 -

MOTION TO COMPEL
COMPLIANCE WITH SUBPOENA
CASE NO:

KNEUPPER & COVEY PC
600 1ST AVE., SUITE 102, PMB 2072
SEATTLE, WA 98104
(206) 759-7520

how a defendant carried out an illegal enterprise, (iii) a defendant's role in the enterprise, including whether a defendant committed a predicate act, (iv) a defendant's awareness of the nature and scope of the enterprise, and (v) potential co-conspirators. *See, e.g.*, *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, No. 16-cv-00236-WHO (DMR), 2018 U.S. Dist. LEXIS 91336, at *20-21 (N.D. Cal. 2018); *see generally United States v. Rodriguez*, 215 F.3d 110, 117 (1st Cir. 2000) ("[E]vidence of communications among the co-conspirators would be relevant not only to prove the existence of the conspiracy but to prove that the substantive crime was committed as well.").

More particularly, courts in this circuit and elsewhere have found relevant communications in the possession of third parties that a party requires to verify the completeness of other communications. "The mere availability of the documents from another source, however, does not preclude a subpoena directed to a nonparty if the party serving the subpoena can show that it is more expeditious to obtain the documents from the witness." *Gray v. Town of Easton*, No. 3:12cv166(RNC), 2013 U.S. Dist. LEXIS 75062, at *9 (D. Conn. 2013) (citation omitted). "In fact, in appropriate circumstances, production from a third party will be compelled in the face of an argument that the same documents could be obtained from a party, because there is reason to believe that the files of the third party may contain different versions of documents, additional material, or perhaps, significant omissions." *Gonzalez-Tzita v. City of L.A.*, No. CV 16-0194 FMO (Ex), 2018 U.S. Dist. LEXIS 231371, at *6-7 (C.D. Cal. 2018) (quoting *Viacom Int'l, Inc. v. YouTube, Inc.*, No. C 08-80129 SI, 2008 U.S. Dist. LEXIS 79777, at *10 (N.D. Cal. 2008)); *see, e.g.*, *In re Uber Techs., Inc.*, No. 23-md-03084-CRB (LJC), 2024 U.S. Dist. LEXIS 123530, at *19-20 (N.D. Cal. 2024) ("Rule 45 does not require that a requesting party exhaust party discovery before seeking discovery from a nonparty."); *W. Penn Allegheny*

MOTION TO COMPEL
COMPLIANCE WITH SUBPOENA
CASE NO:

KNEUPPER & COVEY PC
600 1ST AVE., SUITE 102, PMB 2072
SEATTLE, WA 98104
(206) 759-7520

*Health Sys. v. UPMC*, No. 2:09-cv-00480-JFC, 2013 U.S. Dist. LEXIS 197070, at *11 (W.D. Pa. 2013); *Software Rights Archive, LLC v. Google, Inc.*, No. 09-017-JJF, 2009 U.S. Dist. LEXIS 43835, at *8 (D. Del. 2009) (discovery from a nonparty is appropriate where a party only has a set of documents "whose completeness is not readily verifiable.") (citation omitted).

Petitioners have shown that the Skype conversations obtained from Mr. Flynn have sufficient indicia of incompleteness to make Microsoft's data—almost surely more complete—relevant. Mr. Flynn is unwilling or unable to produce a full accounting of his individual Skype chats. *See* Sampson Decl., Ex. D at 32, Ex. E at 33. And to the extent that Mr. Flynn was removed from group chats involving Defendants or other co-conspirators, he no longer has access to those chats, even though they may still exist. Petitioners need for Microsoft's data is based on more than mere suspicion; the chats produced by Mr. Flynn themselves call into question whether those documents are complete or whether there were other unproduced communications. As a result, the communications sought by the Subpoena are not readily available from another source and Microsoft is the most efficient—if not the only—custodian of those communications.

To the extent that Microsoft contends that ECPA prohibits it from complying with the Subpoena, it is mistaken. ECPA contains a safe harbor for disclosure of subscriber content data pursuant to "the lawful consent of the originator or an addressee or intended recipient of such communication, or the subscriber in the case of remote computing service." 18 U.S.C. § 2702(b)(1); *Graf v. Zynga Game Network, Inc. (In re Zynga Privacy Litig.)*, 750 F.3d 1098, 1104 (9th Cir. 2014). Accordingly, a provider may disclose documents in response to a civil subpoena with the subscriber's consent. *See Nuaman Abdulla Ahmed Al Noaimi v. Zaid*, No. 11-1156-EFM, 2012 U.S. Dist. LEXIS 144061, at *9 (D. Kan. 2012) ("[C]onsent,

MOTION TO COMPEL  
COMPLIANCE WITH SUBPOENA  
CASE NO:

KNEUPPER & COVEY PC  
600 1ST AVE., SUITE 102, PMB 2072  
SEATTLE, WA 98104  
(206) 759-7520

when attached to the subpoena, alleviates any concern that production might violate [ECPA]."); *Facebook, Inc. v. Pepe*, 241 A.3d 248, 258 n.34 (D.C. App. Ct. 2020) (collecting cases reflecting the "substantial weight of authority" rejecting the proposition that ECPA excuses noncompliance with a civil subpoena). And a declaration from the subscriber authorizing the disclosure suffices to give consent under ECPA. *See Super Vitaminas, S.A.*, No. 17-mc-80125-SVK, 2017 U.S. Dist. LEXIS 191845, at *9 (N.D. Cal. 2017). Here, Petitioners obtained Mr. Flynn's consent by way of a declaration authorizing the disclosure of his Skype messages. ECPA does not present a barrier to Microsoft's compliance with the Subpoena.

The Subpoena also is proportional to Petitioners' need for the information. The issues at stake in the case are significant—a years-long con affecting thousands of innocent consumers. The court in the underlying action already has determined that Plaintiffs have met the requirements of proceeding as a class, demonstrating the extent and gravity of the misconduct alleged. Because of the extent of the allegations, and the availability of treble statutory damages under 18 U.S.C. § 1964(c), the amount in controversy in the underlying action is expected to be more than $50 million. Those factors weigh heavily in favor of compelling the information sought by the Subpoena. *See Comprehensive Pharmacy Servs., LLC v. Ascension Health Res. & Supply Mgmt. Grp., LLC*, No. 4:17 CV 16 CDP, 2018 U.S. Dist. LEXIS 62075, at *6 (E.D. Mo. 2018) ("[A]ny burden in production must be considered in relation to the amount in controversy—which here is alleged to be at least $5.4 million.").

Set against the significant issues and amount in controversy is the fact that compliance would not be unreasonably burdensome. The Subpoena seeks a narrow class of communications—those between Mr. Flynn, a central figure in the Keto Product fraud, and the Defendants and other co-conspirators. The Subpoena does not

- 12 -

MOTION TO COMPEL
COMPLIANCE WITH SUBPOENA
CASE NO:

KNEUPPER & COVEY PC
600 1ST AVE., SUITE 102, PMB 2072
SEATTLE, WA 98104
(206) 759-7520

seek all of Mr. Flynn's communications, but only those with other Keto Associates or the Defendants and their current or former employees. *See* Sampson Decl., Ex. A. The Subpoena also describes those documents with particularity—communications with an identifiable set of people, identified by name and often by a unique handle. Because of the specificity with which the documents are described in the Subpoena, Microsoft should have little trouble knowing what documents the Subpoena seeks and how to find them. *See generally United States v. Google LLC*, 690 F. Supp. 3d 1011, 1023 (N.D. Cal. 2023) (subpoena sufficiently tailored where it requested information from individuals "who used a specific Google email account during a specific date range"); *Karaman v. Turkcell Commc'n Servs. (In re Request for Int'l Judicial Assistance from the 2nd Consumer Court of Ankara)*, No. 23-mc-80250-JSC, 2023 U.S. Dist. LEXIS 211420, at *8 (N.D. Cal. 2023) (subpoena not unduly burdensome or intrusive in part because it identified specific email accounts). Microsoft has not identified any compelling reason why it cannot identify those specific communications, should they still exist, and produce them.

The Subpoena is limited temporally, seeking Mr. Flynn's chats from 2019—the year when the Petitioners allege that Keto Associates began working with the Defendants—through 2023. Because of the specificity with which the subpoena identifies the documents, the collection and production of those records would not be unduly burdensome. *See Mount Hope Church v. Bash Back*, 705 F.3d 418, 428 (9th Cir. 2012) (subpoena did not impose an undue burden when it "only requested a limited amount of information that was easily accessible by [the subpoenaed party]").

Petitioners seek from Microsoft information that is directly probative of their claims in the underlying action. Communications among co-conspirators are foundational evidence. And Petitioners have taken reasonable steps to reduce the

MOTION TO COMPEL  
COMPLIANCE WITH SUBPOENA  
CASE NO:

KNEUPPER & COVEY PC  
600 1ST AVE., SUITE 102, PMB 2072  
SEATTLE, WA 98104  
(206) 759-7520

burden on Microsoft by specifying the information that they are seeking with particularity and confining the Subpoena to a discrete set of individuals and time period. Compliance with the Subpoena is not unduly burdensome, and any burden is outweighed by Petitioners' need for the information.[3]

## VI. CONCLUSION

This Court has jurisdiction over the enforcement of the Subpoena. The Subpoena seeks relevant information about documents that are essential to Petitioners' ability to develop their case in the underlying action. The Subpoena also is narrow, specifies the requested contents with precision, and is not unduly burdensome. Microsoft has no legally cognizable excuse for failing to produce documents responsive to the Subpoena. Accordingly, Petitioners request that the Court issue an order compelling Microsoft to produce responsive documents within 14 days and award Petitioners such additional relief as the Court deems just and necessary.

Dated: October 2, 2024

By:   */s/ Caitlin Skurky*

**Kneupper & Covey PC**
Caitlin Skurky, Esq.
Washington Bar No. 60246
600 1st Ave., Suite 102, PMB 2072
Seattle, WA 98104
caitlin@kneuppercovey.com
(206) 759-7520
*Attorney for Petitioners*

---

[3] Microsoft asserts several other boilerplate objections. *See* Sampson Decl. Ex. G at 2-3; 5-6; 7. The applicability of these generic objections to the Subpoena is not apparent from the face of Microsoft's responses, and Microsoft focused its objections during the meet and confer process on the burden of compliance and its obligations under ECPA. Petitioners reserve the right to address any other such objections in a subsequent submission.

- 14 -

MOTION TO COMPEL
COMPLIANCE WITH SUBPOENA
CASE NO:

KNEUPPER & COVEY PC
600 1ST AVE., SUITE 102, PMB 2072
SEATTLE, WA 98104
(206) 759-7520

# CERTIFICATE OF WORD COUNT

I certify that this memorandum, excluding the signature block, contains 4,196 words, in compliance with the Local Civil Rules.

| | |
|---|---|
| Dated: October 2, 2024 | By:   */s/ Caitlin Skurky* |
| | **Kneupper & Covey PC** |
| | Caitlin Skurky, Esq. |
| | Washington Bar No. 60246 |
| | 600 1st Ave., Suite 102, PMB 2072 |
| | Seattle, WA 98104 |
| | caitlin@kneuppercovey.com |
| | (206) 759-7520 |
| | |
| | *Attorney for Petitioners* |

- 15 -

MOTION TO COMPEL
COMPLIANCE WITH SUBPOENA
CASE NO:

KNEUPPER & COVEY PC
600 1ST AVE., SUITE 102, PMB 2072
SEATTLE, WA 98104
(206) 759-7520

# CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2024, I caused Petitioners' Notice of Motion and Motion to Compel Compliance With Subpoena for Production of Documents by Microsoft Corporation to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing.

Shortly following the electronic filing of this document, a copy of the foregoing will also be sent via first-class mail to Microsoft and by email Microsoft's counsel.

By:   */s/ Caitlin Skurky*

**Kneupper & Covey PC**
Caitlin Skurky, Esq.
Washington Bar No. 60246
600 1st Ave., Suite 102, PMB 2072
Seattle, WA 98104
caitlin@kneuppercovey.com
(206) 759-7520

- 16 -

MOTION TO COMPEL
COMPLIANCE WITH SUBPOENA
CASE NO:

KNEUPPER & COVEY PC
600 1ST AVE., SUITE 102, PMB 2072
SEATTLE, WA 98104
(206) 759-7520